IN THE
# United States Court of Appeals for the Federal Circuit

JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., et al.,
*Plaintiffs*

GALLEHER CORP., GALLEHER, LLC., BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD., RIVERSIDE PLYWOOD CORPORATION,
*Plaintiffs-Appellants*

v.

UNITED STATES
*Defendant-Appellee*

AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING,
*Defendant*

Appeal from the United States Court of International Trade
in case no. 20-03885 Judge Timothy M. Reif

**OPENING BRIEF OF PLAINTIFFS-APPELLANTS BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD., RIVERSIDE PLYWOOD CORPORATION**

Irene H. Chen, Esq.
VCL Law LLP
1945 Old Gallows Rd., Ste 260
Vienna, VA 22182
Tel: (301) 760-7393
Email: ichen@vcllegal.com

Mark Lehnardt, Esq.
Davis & Leiman, PLLC
1025 Connecticut Ave., N.W., Ste 1012
Washington, DC 20036
Tel : (202) 642-4850
Email : mlehnardt@dltrade.com

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 2026-1119

**Short Case Caption** Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. v. U.S.

**Filing Party/Entity** Baroque Timber Industries (Zhongshan) Co., Ltd., Riverside Plywood Corporation

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/12/2025

Signature: /s/ Irene H. Chen

Name: Irene H. Chen

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Baroque Timber Industries (Zhongshan) Co., Ltd. | | Samling Global Limited, Lingui Developments Berhad, and Glenealy Plantations (Malaya) Berhad |
| Riverside Plywood Corporation | | Samling Global Limited, Lingui Developments Berhad, and Glenealy Plantations (Malaya) Berhad |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| Andrew T. Schutz | Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP | appeared for the entities in the originating court |
| Francis J. Sailer | Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP | appeared for the entities in the originating court |
| Jordan Kahn | Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP | appeared for the entities in the originating court |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)     ☐  No     ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**INTRODUCTION** ..................................................................................4

**STATEMENT OF RELATED CASES** ..................................................4

**JURISDICTIONAL STATEMENT** .......................................................4

**STATEMENT OF THE ISSUE** .............................................................5

**STATEMENT OF THE CASE AND FACTS RELATED TO THE ISSUE** .......5

**SUMMARY OF THE ARGUMENT** ....................................................12

**ARGUMENT** .......................................................................................13

   I.   STANDARD OF REVIEW ...............................................................13

   II.  THE CIT ERRED IN CONCLUDING THAT COMMERCE'S APPLICATION OF AFA IN FINDING USE OF THE EBCP BY BAROQUE IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW.........................................................15

     A.  *Case Precedent Establishes that Respondents Like Baroque May Submit Record Evidence To Demonstrate Non-Use of the ECBP Even if the GOC Fails to Cooperate* ....................................................................16

     B.  *The Statute Requires Commerce to Provide Baroque With an Opportunity to Remedy a Deficiency in its Response* ...........................................17

**CONCLUSION** ....................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1326 (Fed. Cir. 2020) ....................................................................................................14

*Changzhou Trina Solar Energy Co. v. United States*, No. 17-00198, 2019 WL 5856438, at *4 (Ct. Int'l Trade Nov. 8, 2019).....................................................21

*China Steel Corp. v. United States*, 264 F. Supp. 2d 1339, 1355 (Ct. Int'l Trade 2003) ....................................................................................................20

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) .......................................14

*Dalian Meisen Woodworking Co. v. United States*, No 20-00110, 2022 WL 1598896 at *8-9 (Ct. Int'l Trade May 12, 2022) .................................................19

*Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970) .....14

*Guizhou Tyre Co. v. United States, No. 18-00100, 2019 WL 6718926, at *3–6 (Ct. Int'l Trade Dec. 10, 2019)* ...................................................................21

*Huayin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) ....................................................................................................14

*Risen Energy Co. v. United States*, No. 20-03912, 2022 WL 1499716 (Ct. Int'l Trade May 12, 2022)..........................................................................19

*SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018).....14

*Yama Ribbons & Bows Co. v. United States*, 419 F. Supp. 3d 1341 (Ct. Int'l Trade 2019) ....................................................................................................16

Yama Ribbons & Bows Co. v. United States, No. 18-00054, 2019 WL 7373856, at *2–12 (Ct. Int'l Trade Dec. 30, 2019) ...............................................21

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013) ...........................................................................................14

*Zhejiang Junyue Standard Part Co. v. United States*, No. 20-00102, 2022 WL
    *1701942* (Ct. Int'l Trade May 19, 2022)...........................................................19

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................13

28 U.S.C. § 1295(a)(5) ...........................................................................5

28 U.S.C. § 1581(c)(2018) ......................................................................4

28 U.S.C. § 2107(b) ...............................................................................5

**RULES**

Fed. R. App. P. 4(a)(1)(B ........................................................................5

## INTRODUCTION

This brief is submitted on behalf of Riverside Plywood Corp. ("Riverside Plywood"), and its cross-owned affiliate Baroque Timber Industries (Zhongshan) Co., Ltd. ("Baroque Timber") (collectively "Baroque") in the appeal of the decision and final judgment issued by the Court of International Trade (the "CIT") in *Jiangsu Senmao Bamboo & Wood Indus. Co. Ltd., v. United States*, Judgment (Ct. Int'l Trade, September 11, 2025).

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceedings in the lower court has previously been before this Court or any other appellate court. No other appeal is pending in this Court or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## JURISDICTIONAL STATEMENT

This action is an appeal from the final judgment of the U.S. Court of International Trade ("CIT") in *Jiangsu Senmao Bamboo and Wood industry Co., Ltd. et al v. United* States, Ct. No. 20-03885, judgment (Ct. Int'l Trade Sep. 11, 2025) ("*Jiangsu Senmao*") (APPX 157-159) and Slip Opinion 25-28 (Ct. Int'l Trade March 24, 2025) (APPX 40-156). The CIT had jurisdiction pursuant to 28 U.S.C. § 1581(c)(2018), which grants that court exclusive jurisdiction over "any civil action commenced under section 516A of the Tariff Act of 1930." This Court

has jurisdiction to review decisions of the CIT pursuant to 28 U.S.C. § 1295(a)(5). This appeal by Baroque was timely filed pursuant to 28 U.S.C. § 2107(b) and Fed. R. App. P. 4(a)(1)(B) because Baroque filed its notice of appeal on October 28, 2025, within 60 days of the CIT's final judgment in *Jiangsu Senmao*. This appeal is from a final order or judgment by the CIT that disposes of all parties' claims.

## STATEMENT OF THE ISSUE

**ISSUE:**    The Department of Commerce has generally accepted as competent evidence that an exporter did not benefit from the Export Buyer's Credit Program ("EBCP") declarations from the exporter's customers that they did not participate in the EBCP. Commerce has accepted such declarations despite declaring the Government of China ("GOC") to be uncooperative in responding to questions in relation to this program. Here, Commerce ignored Baroque's customer declarations, and imputed benefit based on the application of adverse facts available (AFA) for the GOC's failure to cooperate. Is Commerce's decision without support of substantial evidence and contrary to law as arbitrary and capricious?

**Short Answer:**    Yes.  Commerce ignoring the declarations and failing to follow its general practice is arbitrary and capricious and thus without substantial evidence support and contrary to law.

## STATEMENT OF THE CASE AND FACTS RELATED TO THE ISSUE

This appeal arises from the sixth administrative review of the countervailing duty ("CVD") order on multilayered wood flooring ("MLWF") from the People's Republic of China, covering the period January 1, 2017, through December 31, 2017 ("POR"). Baroque challenges certain aspects of the CIT's opinion issued on March 24, 2025, concerning the Final Results of Commerce's 2017 administrative review of MLWF.

On March 14, 2019, the U.S. Department of Commerce ("Commerce") initiated the administrative review. See *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 9,297 (Mar. 14, 2019). Commerce selected Baroque and one other Chinese manufacturer/exporter as mandatory respondents. Commerce issued its initial CVD questionnaire on May 24, 2019. APPX 160-251.

Baroque submitted an affiliated parties response to the initial questionnaire on June 14, 2019, APPX 252-266, and a response to the remainder of the initial questionnaire on July 16, 2019, APPX 267-328. In its July 16, 2019 initial questionnaire response, Baroque reported non-use of the EBCP program and attached certain non-use certifications by its customers. APPX 295, 313-328. On August 28, 2019, Commerce issued a supplemental questionnaire to Baroque. APPX 329-331. On September 16, 2019, Baroque submitted its supplemental questionnaire response. APPX 332-341. On October 22, 2019, Commerce issued a

New Subsidy Allegations Questionnaire to Baroque. APPX 342-345. On November 12, 2019, Baroque submitted its New Subsidy Allegations questionnaire response. APPX 346-353. On December 18, 2019, Commerce issued a Second Supplemental Questionnaire to Baroque. APPX 354-357. On January 8, 2020, Baroque submitted its Second Supplemental Questionnaire Response. APPX 358-370.

Baroque also submitted timely factual information on August 12, November 13, and November 25, 2019, for the Commerce's use in the valuation of the benchmarks with respect to the provision of plywood for less than adequate remuneration ("LTAR") program alleged in the review.

On February 6, 2020, Commerce published its *Preliminary Results*, assigning Baroque a preliminary CVD rate of 18.18 percent. *Multilayered Wood Flooring From the People's Republic of China: Preliminary Results of Countervailing Duty Review, and Intent to Rescind Review, in Part; 2017,* 85 Fed. Reg. 6908 (Feb. 6, 2020) and accompanying Decision Memorandum, APPX 371-415. In the accompanying Preliminary Decision Memorandum, Commerce applied adverse facts available with respect to the Export Buyer's Credit Program ("EBCP"), finding that the Government of China had failed to provide requested information concerning the operation of the program, including information necessary to verify non-use, APPX 393-396.

In its March 13, 2020, case brief, Baroque challenged Commerce's application of adverse facts available with regard to use of the Export Buyer's Credit Program ("EBCP") based on the Government of China's perceived failure to cooperate and non-participation to the best of its ability, APPX 429-435. Baroque contended that the information Commerce claimed was missing was relevant, at most, to understanding the operation of the program, not to establishing or verifying actual use by Baroque or its customers. Baroque further argued that record information established that the EBCP was not used, based on Baroque's statement of non-use in its initial questionnaire response after confirming with its U.S. customers and its submission of certain customer declarations of non-use. APPX 432-433.

On November 27, 2020, Commerce published the *Final Results*, assigning Baroque a final CVD rate of 14.09 percent. *Multilayered Wood Flooring From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative* Review: 2017, 85 Fed. Reg. 76011 (Nov. 27, 2020) ("*Final Results*") and accompanying Issues and Decision Memorandum, APPX 437-506.

In the Issues and Decision Memorandum accompanying the *Final Results* ("Final IDM"), Commerce rejected Baroque's challenges to the EBCP determination (Cmt. 9). APPX 482-502. Commerce explained that the non-use certifications submitted by Baroque and certain of its customers were insufficient

to establish non-use in light of the GOC's non-cooperation. APPX 500. Commerce determined that the GOC's refusal to provide the 2013 EBCP program revisions, sample application materials, and a complete list of correspondent or partner banks created a gap in the record regarding the operation and disbursement of the program. APPX 492-502. Commerce explained that, since the China Ex-Im Bank and the GOC didn't provide this disbursement information, and the record did not permit Commerce to meaningfully test or tie non-use claims to books and records, Commerce found that the customer certifications of non-use were insufficient. APPX 497. Accordingly, Commerce determined that it could not verify non-use and applied AFA to Baroque for the EBCP. APPX 498.

On December 11, 2020, Baroque filed an appeal at the CIT, challenging certain aspects of the Final Results. *Baroque Timber industries (Zhongshan) Co., Ltd. et al v. United* States, Ct. No. 20-03899. On March 1, 2021, the CIT ordered Baroque's appeal be consolidated into *Jiangsu Senmao Bamboo and Wood Indus. Co., Ltd., et al. v. United States*, Consol. Ct. No. 20-03885.

On August 11, 2022, the CIT issued its first opinion in *Jiangsu Senmao*, 46 CIT at __, 589 F. Supp. 3d at 1195, APPX 1-39, holding that Commerce's selection of mandatory respondents was not supported by substantial evidence, the calculation of the all-others rate "using the individual margins assigned to Jiangsu Guyu and Baroque Timber was not reasonable," and remanded to Commerce for

reconsideration Commerce's respondent selection determination and the calculation of the all-others rate.

On December 7, 2022, Commerce issued its First Remand Results that in which it: (1) deselected Jiangsu Guyu as a mandatory respondent; (2) assigned Jiangsu Guyu's individually calculated rate to itself; and (3) "relied solely on Baroque Timber's individually calculated CVD subsidy rate as the rate assigned to nonselected companies under review." On February 14, 2023, Commerce filed a motion to request a voluntary remand to consider the effect of this Court's decision in *YC Rubber*, 2022 WL 3711377, in which this Court held that when Commerce is required to calculate an average dumping margin from a "reasonable number of exporters or producers" for assignment to non-individually investigated exporters or producers, that number is generally more than one. On February 14, 2023, the CIT granted Commerce's request.

On March 31, 2023, Commerce published its Second Remand Results, stated that "it is reasonable and in accordance with law to continue to decline to select a replacement mandatory respondent in this review" and made no changes to the First Remand Results.

On March 24, 2025, the CIT issued an opinion sustaining Commerce's Final Results and Second Remand Results in part and remanding it in part. *Jiangsu Senmao Bamboo and Wood industry Co., Ltd. et al v. United* States, Ct. No. 20-

03885, Slip Opinion 25-28 (Ct. Int'l Trade Mar. 24, 2025) APPX 40-156. Specifically, the CIT remanded Commerce's decision on respondent selection, and sustained Commerce's application of AFA to Baroque with respect to the EBCP. APPX 58-61, 138-155. The Court held that Commerce reasonably concluded that the Government of China's refusal to provide critical information, particularly the 2013 program revisions, created a gap in the record that prevented verification of non-use. Although the respondents and some of their customers submitted non-use certifications, the Court agreed with Commerce that those certifications were insufficient because Commerce lacked a full understanding of how the program operated after the 2013 revisions. The Court emphasized that the GOC's non-cooperation impeded Commerce's ability to confirm non-use through normal verification methods. Accordingly, the Court concluded that Commerce's application of AFA and its finding of benefit under the EBCP were supported by substantial evidence and in accordance with law.

On August 8, 2025, Commerce filed remand results of redetermination. On remand, Commerce (1) selected Jiangsu Senmao as a mandatory respondent and calculated an individual subsidy rate of 2.45 percent ad valorem; (2) removed HS subheading 4412.99 from the plywood for LTAR benchmark for Baroque after reconsidering record evidence and concluding that the subheading covered laminated wood products not comparable to Baroque's plywood inputs; and (3)

further explained, but did not revise, its veneer benchmark for Jiangsu Guyu. As a result, Commerce recalculated Baroque Timber's total subsidy rate to 13.18 percent and revised the non-selected rate to 10.02 percent. APPX 507-528.

On September 11, 2025, the CIT sustained Commerce's remand redetermination in full and issued a final judgment. The Court found that Commerce's redetermination complied with the remand instructions and was supported by substantial evidence. APPX 157-159.

Baroque now appeals the CIT's September 11, 2025 Judgment and March 24, 2025 decision that sustained Commerce's application of AFA regarding the EBCP program with respect to Baroque, contending that this determination is unsupported by substantial evidence and contrary to law.

## SUMMARY OF THE ARGUMENT

The Court of International Trade erred in sustaining Commerce's *Final Results* because Commerce's determination regarding the application of adverse facts available ("AFA") with regard to the Export Buyer's Credit Program as applied to Baroque was not supported by substantial evidence and not in accordance with law.

Commerce applied AFA to the GOC for failure to submit information relating to the Export Buyer's Credit Program but improperly penalized Baroque in connection with the GOC's non-response by finding use of the EBCP. Record

evidence established non-use of the EBCP by Baroque and its customers. Baroque had reported that it had confirmed with its U.S. customers non-use of the EBCP by its customers and submitted a number of non-use certifications by Baroque's customers in its questionnaire response.

Case precedent is well-established that when cooperative respondents have provided evidence of non-use of the EBCP, the Court has rejected Commerce's attempts to apply AFA even though the GOC failed to cooperate in responding to Commerce's questionnaire regarding the EBCP.

Further, to the extent that Commerce required the full set of non-use certifications from Baroque, it never requested that Baroque remedy the deficiency. Accordingly, Commerce's EBCP determination regarding Baroque was unlawful and unsupported by substantial evidence and should be remanded back to Commerce.

## **ARGUMENT**

### I.    **Standard of Review**

This Court applies the same standard of review as the Court of International Trade. See 19 U.S.C. § 1516a(b)(1)(B)(i). Under that standard, Commerce's

determinations must be held unlawful if they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."[1]

Substantial evidence is "more than a mere scintilla," and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Huayin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In applying this standard, the Court must review the record as a whole, considering not only evidence that supports Commerce's determination but also "whatever in the record fairly detracts from the substantiality of the evidence." *Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1326 (Fed. Cir. 2020) (quoting *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018)).

The substantial evidence standard does not permit Commerce to rely on conjecture, assumption, or isolated pieces of evidence divorced from the record as a whole. See, e.g., *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013). Nor may Commerce disregard record evidence that detracts from its conclusion without reasoned explanation. An agency must demonstrate that it has taken a "hard look" at the relevant evidence and has engaged in reasoned decision-making. See *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970).

---

[1] 19 U.S.C. § 1516a(b)(1)(B)(i)

Under these principles, the Court shall reverse or remand where

Commerce's findings lack record support, where its reasoning fails to address

material evidence, or where it departs from statutory requirements governing

subsidy calculations and adverse inferences

## II.     The CIT Erred in Concluding that Commerce's Application of AFA in Finding Use of the EBCP by Baroque is Supported by Substantial Evidence and in Accordance with Law

The CIT erred in finding that Commerce's application of AFA regarding

Baroque's use of the EBCP is supported by substantial evidence and in accordance

with law. Commerce applied AFA to the Government of China ("GOC") for its

perceived failure to submit to Commerce requested information relating to the

Export Buyer's Credit Program.

But this should not have been the end of the analysis for Commerce.

Commerce improperly penalized Baroque in connection with the GOC's non-

response by applying adverse facts available to find use of the EBCP by Baroque.

But Baroque fully answered the EBCP questions presented by Commerce in its

questionnaire regarding non-use of the EBCP by any of its customers. In such

cases, Commerce is required to consider and verify this evidence of non-use before

rejecting it. To the extent that Commerce determined that Baroque's response was

deficient in not providing a full set of non-use certifications, it was required by

statute to provide Baroque an opportunity to remedy the deficiency before resorting to AFA.

### A. Case Precedent Establishes that Respondents Like Baroque May Submit Record Evidence To Demonstrate Non-Use of the ECBP Even if the GOC Fails to Cooperate

Case precedent establishes that respondents may "fill the gap" in the event of the Government of China's failure to cooperate in responding to questions regarding the Export Buyer's Credit Program by submitting evidence of non-use of the EBCP program. *See, e.g., Yama Ribbons & Bows Co. v. United States*, 419 F. Supp. 3d 1341 (Ct. Int'l Trade 2019) (Court rejecting Commerce's reliance on AFA for EBCP benefits when record evidence established that plaintiff did not receive benefits from the EBCP, despite the Government of China's failure to respond to certain information requests and ordering Commerce to attempt to verify the certifications of non-use); *Changzhou Trina Solar Energy Co. v. United States*, No. 17-00198, 2019 WL 5856438, at *4 (Ct. Int'l Trade Nov. 8, 2019) (rejecting Commerce's claim that missing information not provided by GOC is necessary to verify claims of non-use); *Guizhou Tyre Co. v. United States, No. 18-00100, 2019 WL 6718926, at *3–6 (Ct. Int'l Trade Dec. 10, 2019)*(finding that record evidence exists that detracts from Commerce's inference that Plaintiff benefited from the EBCP and that Commerce must attempt to verify before finding that a gap in the record exists).

As described in the *Preliminary Results*, Baroque submitted record evidence of non-use, including certificates of non-use from a majority of its customers. APPX 295, 313-328, 393-394. Nevertheless, Commerce rejected Baroque's evidence of non-use, claiming the information could not be verified due to the GOC's nonresponse. Commerce claimed in the *Final Results* that it would not be able to verify the non-use certificates without the GOC's provision of the "2013 {Administrative Measures} revisions and a complete list of correspondent/partner/ intermediate banks." APPX 500. Commerce's explanation of its inability to verify is not supported by substantial evidence because it is based on the GOC's nonresponse, not the gap in the record that may be filled by record evidence of non-use submitted by Baroque.

Commerce's rejection of Baroque's non-use evidence in the *Final Results* is not supported by substantial evidence or in accordance with law.

## B. The Statute Requires Commerce to Provide Baroque With an Opportunity to Remedy a Deficiency in its Response

The CIT erred in affirming Commerce's AFA determination regarding use of EBCP by Baroque because it did not submit certifications of non-use from "each of its U.S. customers." APPX 155. Baroque maintains that there is no deficiency in the first instance as Commerce's initial question regarding the EBCP did not even ask for documentation such as non-use certificates from all of Baroque's

customers. Before resorting to adverse facts available, Commerce is required to go through the statutorily required steps, i.e., providing an opportunity for Baroque to remedy a deficiency under 19 U.S.C. § 1677m(d).

Commerce's questions regarding the EBCP in its initial questionnaire response are set forth below:

**Baroque Initial Questionnaire Response**

> 3.    If you claim that none of your customers used buyer credits during the POR, please explain in detail the steps you took to determine that no customer used the Buyer Credit Facility.

*See* Baroque/Riverside  IQR at 21 (APPX 295). Thus, Commerce asked only for an explanation, not for submission of any specific documentation.

In its response to this question, Baroque reported the following:

> **Response:** Riverside Plywood's and Baroque Timber's export customers could not obtain Export Buyer's Credits from China ExIm bank, or any other partner bank, without Riverside Plywoods and Baroque Timbers direct cooperation and involvement. Since neither Riverside Plwyood (sic) nor Baroque Timber have ever been approached by their customers or by China ExIm bank regarding an Export Buyer's Credit, they have direct knowledge that their export customers have not used this program. Nevertheless, the companies also contacted their U.S. customers and confirmed that they did not use the program. See **Exhibit 15c.**

*See id.*

Baroque reported that it had contacted its U.S. customers and confirmed non-use of the EBCP. Commerce has made the question ambiguous, in particular because the question does not specifically ask for non-use certifications. Even

though Commerce did not request non-use certifications, Baroque attached a number of non-use certifications from 60 percent of its customers. *Id.* Neither Baroque's representations nor the non-use certifications were ever called into question by any other record evidence.

After the IQR, Commerce issued multiple supplemental questionnaires to Baroque - the Supplemental Questionnaire, *See* Dept. of Commerce to Baroque *Re: Supplemental Questionnaire* (APPX 329-331), the New Subsidy Allegation Questionnaire, *See* Dept. of Commerce to Baroque *Re: NSA Questionnaire* (APPX 342-345), and the Second Supplemental Questionnaire, *See* Dept. of Commerce to Baroque *Re: Second Supplemental Questionnaire* (APPX 354-357) - yet none expressly requested additional customer certifications, identified deficiencies in Baroque's EBCP reporting, or notified Baroque of a specific gap requiring clarification. Commerce therefore did not define a concrete gap in the record tied to Baroque's reporting, nor did it demonstrate that the alleged missing government information was the only means of verifying non-use.

When cooperative respondents have provided evidence of non-use of the EBCP, the Court has rejected Commerce's attempts to apply AFA to those respondents due to the GOC's alleged failure to provide requested information regarding the EBCP. *See, e.g., Zhejiang Junyue Standard Part Co. v. United States, No. 20-00102, 2022 WL 1701942* (Ct. Int'l Trade May 19, 2022); *Dalian Meisen*

*Woodworking Co. v. United States*, No 20-00110, 2022 WL 1598896 at *8-9 (Ct.

Int'l Trade May 12, 2022). Additionally, the Court has repeatedly remanded

EBCP-related cases back to Commerce to conduct verification before rejecting the

respondent's proof of non-use. *See, e.g., Risen Energy Co. v. United States*, No. 20-

03912, 2022 WL 1499716 (Ct. Int'l Trade May 12, 2022).

     To the extent that Commerce found Baroque's response and sample

documentation deficient, Commerce is required to provide Baroque notice and an

opportunity to remedy the deficiency under 19 U.S.C. § 1677m(d);

> If…a response to a request for information…does not
> comply with the request, the administering
> authority…shall promptly inform the person submitting
> the response the nature of the deficiency and <u>shall, to the
> extent practicable</u>, provide that person with an
> opportunity to remedy or explain the deficiency…"

19 U.S.C. § 1677m(d); *China Steel Corp. v. United States*, 264 F. Supp. 2d

1339, 1355 (Ct. Int'l Trade 2003) ("Before resorting to facts available, however,

the Department is required to comply with the notice and remedial requirements of

§1677m(d)."). The CIT erred in concluding that "Commerce explained fully the

reasons that information on the record was insufficient or impossible to verify."

APPX 150.

The statute obligates Commerce to remedy any identified deficiency by asking Baroque for a full set of non-use certifications in a supplemental questionnaire.

That Commerce applied AFA to the GOC for what Commerce identified as a deficiency regarding EBCP does not mean that it may short circuit its statutory obligations regarding the application of AFA to Baroque. The case should be remanded back to Commerce, so that it may reconsider Baroque's non-use of the EBCP and if needed, request any additional non-use certifications from Baroque's customers.

## **CONCLUSION**

For the foregoing reasons, Baroque respectfully requests that this Court reverse the judgment of the Court of International Trade and remand with instructions that Commerce to determine that the Export Buyer's Credit Program was not applied used during the period of review.

Respectfully submitted,                          Respectfully submitted,

/s/Irene H. Chen                                 /s/Mark Lehnardt
Irene H. Chen, Esq.                              Mark Lehnardt, Esq.
VCL Law LLP                                      Davis & Leiman, PLLC
1945 Old Gallows Rd., Ste 260                    1025 Connecticut Ave., N.W., Ste 1012

Vienna, VA  22182                          Washington, DC  20036
Tel: (301) 760-7393                        Tel : (202) 642-4850
Email: ichen@vcllegal.com                  Email : mlehnardt@dltrade.com

Attorneys for Plaintiffs-Appellants

March 2, 2026

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing Opening Brief of Plaintiffs-Appellants Baroque Timber Industries (Zhongshan) Co., Ltd., Riverside Plywood Corporation, complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules. It was prepared using a proportionally-spaced typeface and includes 4235 words.

/s/ Irene H. Chen
Irene H. Chen

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March, 2026, I electronically filed the foregoing opening brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Irene H. Chen
Irene H. Chen